MORRIS, District Judge.
The defendant at the trial offered no evidence, but, when the plaintiff was asked to tell the jury under what circumstances he bought the cooking range and piping, and what was the contract made in reference thereto, the defendant’s counsel produced the paper known in the case as “Exhibit A,” which was signed by the plaintiff. The plaintiff then testified that he had signed the paper after he had bought the range and had given his note for it, and after the range had been delivered, put up, and a fire built in it. The plaintiff testified that Bell, who had brought the range, and put it up, had asked him to sign what he called a “receipt for the range,” and, thinking it was a receipt, he signed it; that Bell professed to read it over, and gave plaintiff a duplicate of it, which he put away *478 amgng his papers without reading it. The defendant then objected to the plaintiff being allowed to testify as to the representations made by either Goetchins, who had first sold the range to the plaintiff, and obtained his note for it, or of Bell, who had brought the range and put it up, as to the range not heating the smoke pipe, and as to the absence of any risk of the pipe setting fire to any woodwork, although placed against it without any terra cotta or tin protection around it. The court overruled this • objection, and in its instructions told the jury that the range had been purchased under a parol contract made between the plaintiff and Goetchins, the agent of the defendant; that the paper signed by the plaintiff did not supersede the previously executed parol contract of purchase; that it had only the force and effect of a receipt, and, having no contractual obligation, was capable of being explained by parol evidence; that it could not have relation back and be a substitute for the previously accepted parol contract. This instruction proceeded upon the ground that the plaintiff, at the first interview with Goetchins on the 15th, having agreed to purchase the range and piping, and having then given his promissory note, the sale was complete, and the terms of it settled, so that the paper signed by both the vendor and purchaser upon the delivery of the range and piping on the 21st could not change them. In this ruling we think there was error. The agreement of purchase on the 15th was made after inspecting a sample range which Goetchins had in one of the company’s wagons. He was to send one like it, and have it put up. Until the range was put in place, it was not delivered, and the transaction was not complete. When such a transaction is complete, there is no rule of law which prevents the parties from both signing, if they choose to do so, a written paper which shall express the terms of the contract. It is true that neither is compelled to sign such a paper, and that neither may, without the consent of the other, impose any new terms; but, if they both do sign a paper with the intent that it shall express their contract, we are not aware of any rule of law which prevents such an agreement from having the same validity which it would have had if signed by both at some earlier stage of the transaction. Worthington v. Bullitt, 6 Md. 172; Mills v. Matthews, 7 Md. 315. When a written contract is so signed by both the parties to be bound, in the absence of clear and convincing proof of fraud or deception in procuring it to be signed it must be presumed to express the entire contract, and parol evidence of previous understandings of the parties is not admissible to vary its terms. It is to be borne in mind that the remedy which the plaintiff below was pursuing in his second cause of action was upon a supposed warranty in the contract of sale that the range and piping could be safely used without terra cotta or other nonconductor to separate the piping from the woodwork. To support this it was necessary to entirely ignore the written paper “Exhibit A,” which does not contain any such warranty, and to rely entirely upon the parol statements given in evidence; and with regard to the first cause of action, which was for deceit in falsely representing that the range and piping was so constructed that it did not require any insulation for the smoke pipe, and thereby inducing the plaintiff to buy it to his damage, the false representations, like the *479 alleged warranty, the plaintiff was attempting to prove by parol testimony of what took place prior to the signing of the written agreement, so that, if the agreement was a valid contract, those representations were not admissible.
The third cause of action, however, rested upon matters not in any way covered by the written agreement, even assuming that it was signed under circumstances which made it the only binding contract The third cause of action was for the alleged negligence of the defendant in so placing the range and piping in position that it set fire to the plaintiff’s house, and caused the damage sued for. The plaintiff’s testimony proved that Goetchins, after having induced the plaintiff to purchase one of defendant’s ranges, and after obtaining plaintiff’s note, payable to the order of the defendant, for the agreed price, went off, saying that he would send the promissory note to the defendant’s superintendent at Lincolnton, and that a man would be sent to put the range up, and explained that because of the peculiar construction of defendant’s make of range and piping no insulation would be required around the piping. On the 21st a man named Bell came with the range and the necessary piping, which was over 23 feet in length. He asked if he could get two carpenters to assist him in putting up the piping. He employed and paid them, and directed how the piping should be erected, and had it run up through the ceiling of the room over the kitchen and out through the roof, having the holes cut for the purpose. He assisted the carpenters, and furnished them the necessary tools from one of the company’s wagons. Both the plaintiff and his son suggested to Bell that there should be some insulation around the pipe where it passed through the woodwork, but Bell insisted that the range and piping manufactured by the defendant were so constructed that insulation was not necessary, and that there was no danger. After the job was completed, Bell paid all of the attendant expenses, partly in money and part with scrip obligations of the defendant company, and obtained from the plaintiff the agreement produced by the defendant at the trial. To sustain this third cause of action it was necessary to prove that the defendant, through its agents, had undertaken to put the range in place with the necessary piping ready for use; that it had done so in its own way; and that the work was so negligently done that without any fault on plaintiff’s' part it had set fire to his house, and caused him damage. There was very full proof of all these facts, and, the jury having found in favor of the plaintiff on this third cause of action, we are required to consider whether any of the assignments of error applicable to it are sustainable.
First, as to the admission of the testimony of the statements by Goetchins and Bell with regard to the peculiar construction of the range manufactured by the defendant, which they were selling for the defendant, it appears to us there was no error, for the reason that as to this cause of action this evidence was not given to prove a warranty or deceitful representations different from those contained in the alleged agreement, but to show how and for what reason the defendant put up the range in the manner it did, and was admissible as part of the res gestse connected with that act of the *480 defendant. The statements of defendant’s agents that they were going to put up the range in a manner different from the ordinary manner, because that was the proper way to place a range of its peculiar construction, was pertinent, and admissible to prove, in connection with other facts, that it was put up in that peculiar manner by defendant’s agent, and not by direction of the plaintiff; and it was left for the jury to say whether or not it was a dangerous and negligent manner, and whether the burning of the house resulted therefrom. We cannot see that any of the exceptions to the evidence are sustainable as applicable to the third cause of action and the issues framed in submitting it to the jury.
We next consider whether, as to this cause of action, any of the ■rulings in refusing the instructions asked by the defendant, which were excepted to, contain reversible error. It is to be noted that the appellant is not entitled to a reversal, because the court may not have fully instructed the jury on the subject of negligence. It can assign as error only the instructions which the court did give, •or which, although requested by the defendant, it refused to give. The instructions requested by the defendant upon the issues raised by the third cause of action are contained in the 21st, 22d, 23d, 24th, 25th, 26th, 27th, and 33d assignments of error. All of these, ■except the 33d, are, in substance, that there was no evidence to ■support that cause of action; that the plaintiff was guilty of contributory negligence, and could not recover; that the danger from using the range and piping was an obvious one, and the plaintiff used it at his own risk; that the fact that the pipe became heated could have been ascertained by ordinary care; and that it was at plaintiff’s own risk that he continued to use it, and his using it was the proximate cause of the loss. It does not appear to us that the.court could have granted any of these instructions. The only ■evidence produced tended to show that the ñre broke out in the roof adjoining the place where the defendant’s agents had run the pipe through only about two weeks before. It does not appear from any testimony that the pipe was observably heated in any place where it could have been seen. There had been no pipe through the roof before, and the apprehension with which the plaintiff had at first regarded the proposal to put the pipe through the roof had been •quieted by the statement of defendant’s agent that the range and pipe were so constructed that a cotton string around the pipe would not burn in 10 years. The plaintiff testified that he knew nothing ■of the peculiar construction of defendant’s range, and was not competent to judge of it. The defendant ought not to be heard to say that the plaintiff must be held guilty of contributory negligence merely because he used the range just as the defendant’s agents put it up and assured him it was safe to use it. It was submitted to the jury to say whether the plaintiff, by his own negligence, contributed to his injury, and they answered that he did not. The defendant desired the court to go much further, and to instruct the jury that the danger was so obvious that the plaintiff, as a reasonably prudent man, ought not to have believed its agent’s statements, and ought to have seen the danger. We see no ground for sus *481 taining this contention. The range and piping were of defendant’s own manufacture, and the plaintiff naturally enough was persuaded that defendant’s agents knew its qualities best.
The thirty-third assignment of error is to the court’s refusal to grant the sixteenth instruction asked by the defendant, viz.:
“That there is no evidence in this case that either Goetchins or Bell had authority to bind the defendant by a contract to erect and place the piping in position, nor is there any evidence that in erecting and placing the range and piping in position in plaintiff’s dwelling the said Bell represented the defendant, and the said defendant is not, therefore, bound by the alleged contract to erect the range and piping, nor is the defendant responsible if the same was negligently erected by Bell, and under his direction.”
The question is not whether Goetchins or Bell had authority to make a contract binding upon the defendant to erect and place the range and piping, but whether what they did do was within the scope of their authority and employment, and whether they did it while engaged in the defendant’s business. The answer which the defendant filed admits that it offered to sell to the plaintiff one of its ranges to place in plaintiff’s dwelling house, to be used for cooking purposes; and it admits that, through its agent, it delivered the range to the plaintiff at his dwelling house. It denies that any piping was placed in contact with the woodwork of said dwelling house by any agent of defendant. It admits that it was engaged in the manufacture and sale of cooking ranges, and that it sold one of its ranges for $68 to the plaintiff. The answer is an admission that Goetchins was defendant’s agent to sell the range and piping, and that Bell was its agent to deliver it with the piping. These agents unquestionably undertook to put it up in a manner suitable, as they claimed, to its peculiar construction; and there was evidence from which the jury was justified in finding that in so doing they were acting within the apparent scope of their employment. No evidence was introduced to contradict this, or in any way to affect the inferences which the jury might fairly make from the facts proved. The contention that when defendant’s agents were making the sale and delivering the range and piping, and getting plaintiff’s note and agreement, they were acting for the defendant, but that when they were placing the range and piping in position, and paying the carpenters, they were acting for themselves, is a contention that requires affirmative proof to support it, and is by no means a presumption of law. In Mechem on Agency (section 734), the law on this subject is well summarized:
“In determining tbe principal’s liability for the agent’s negligence, the important inquiry is not whether the agent was authorized to do, or to omit to do, the act, the doing or not doing of which constitutes the negligence complained of, or whether the act was done or omitted in violation of the principal’s instructions, but whether the act was done or omitted by the agent while engaged in the business of his principal. As is well said by a learned judge: ‘In most cases where the master has been held liable for the negligence of his servant, not only was there an absence of authority to commit the wrong, but it was committed in violation of the duty which the servant owed the master. The principal is bound by a contract made in his name by his agent only when the agent has actual or apparent authority to make it, but the liability of a master for the tort of his servant does not depend primarily upon the possession of an authority to commit it. The question is not solved by comparing *482 the act with the authority. It is sufficient to make the master responsible civiliter if the wrongful act of the servant was committed in the business of the master, and within the scope of his employment; and this although the servant, in doing it, departed from the instructions of his master. The rule is founded upon public policy and convenience. Every person is bound to use due care in the conduct of his business. If the business is committed to an agent or servant, the obligation is not changed. The omission of such care is the omission of the principal, and for the injury resulting therefrom to others the principal is justly held liable. If he employs incompetent or untrustworthy servants, it is his fault; and whether the injury to third persons is caused by the negligence or positive misfeasance of the agent, the maxim respondeat superior applies, provided only that the agent was acting at the time for the principal, and within the scope of the business intrusted to him.’ Higgins v. Turnpike Co., 46 N. Y. 23. So, too, it is immaterial that the act was committed without the principal’s knowledge, or that it was the result of the agent’s misapprehension or misapplication of his principal’s instructions, and was an act which the principal never intended should be done; if, in fact, it was done by the agent in the course of his employment, and not in the willful departure from it, the principal is'liable.”
In Mackay v. Bank, L. R. 5 P. C. 394, it was declared to be settled law that the principal is liable for a fraud as well as for other wrongs committed by an agent without express command in the course of the agent’s service, and for the principal’s benefit.
It is urged on behalf of the range company that, although the court may have been right in refusing the instructions it asked with respect to the issues under the third cause of action, it was error for the court not to have charged the jury for their guidance in considering that issue. To justify a recovery for the plaintiff on the issue of negligence, the only facts necessary to be found were the negligence, the fact that it was committed by the agent in the business of the range company and within the scope of his employment, and the fact that injury had resulted to the plaintiff from the negligence, unmixed with any fault on the part of the plaintiff. As to these facts, the evidence was all one way. The undisputed testimony may almost be said to have required the jury to find for the plaintiff, and, in our judgment, no injury resulted to the defendant from the omission to more specifically charge the jury on these points.
It is also urged that there was error in admitting evidence to be given of the value of the trees shading the house, and which added to its beauty, value, and comfort, and in the court’s instruction to the jury that they might allow for such as were destroyed by the fire. The plaintiff, in his complaint, claimed damages for the loss of his dwelling house and contents and an outhouse near by. It does not seem to us that the destruction of the shade trees surrounding a dwelling house in the country is an item of damage so distinct from the burning of the house itself that it is reversible error to allow such an item to be proved without alleging it as a special damage. It would rather appear to be a damage which naturally and reasonably results from the burning of the house itself under such circumstances.
Upon consideration, we are satisfied that, although there was error in the rulings upon the questions whether or not the printed contract contained the whole contract of sale, so as to exclude parol *483 proof of a warranty or of false representations, yet that there was evidence to support the plaintiff’s right to recover upon the ground of negligence, and that question was rightly submitted to the jury. It was an independent issue put to the jury in accordance with the North Carolina practice. The finding was fully justified by the evidence, and was sufficient to support the verdict. The judgment of the court below is affirmed.