TILLINGHAST v. COTTON MILLS.

(Filed December 4, 1906).

*Pleadings—Counter-claim—Judgment by Default—Breach of Contract—Measure of Damages.*

1. The defendant was not entitled to judgment by default on his counter-claim where, pursuant to leave given by the Court, a formal denial was entered.

2. Where the complaint alleged a contract of sale and a breach thereof, and the answer denied that it was an absolute sale and alleged by way of counter-claim that the goods were shipped on consignment, and demanded an account, the plaintiff's cause of action was in itself a direct denial of the counter-claim, and a judgment by default on the counter-claim before the issues in reference to the plaintiff's cause of action were determined would have been irregular and improper.

3. In an action for breach of a contract of sale of cotton yarns, the measure of damages is the difference between the contract price and market value at the time when and place where the goods should have been delivered by the terms of the contract.

4. Where the plaintiff seeks to recover different and additional damages arising by reason of special circumstances, he is required to show that defendant, at the time the contract was entered into, had knowledge of these circumstances, and of a kind from which it could be fairly and reasonably inferred that the parties contemplated that they should be considered as affecting the question of damages.

5. Where there has been a breach of contract definite and entire, the injured party must do what fair and reasonable business prudence requires to save himself and reduce the damage; or the damage which arises from his own neglect will be considered too remote for recovery.

ACTION by Tillinghast-Styles Company against the Providence Cotton Mills for breach of contract, heard by *Judge C. M. Cooke* and a jury, at the May Term, 1906, of the Superior Court of CATAWBA.

On the part of plaintiff there was allegation and evidence tending to show that on or about 5 June, 1905, defendant contracted to sell and deliver to plaintiff, f. o. b. Providence, R. I., a quantity of cotton yarns as follows:

10,000 lbs. 24 2s regular warp twist skeins, at 18¾c.
10,000 lbs. 26 2s regular warp twist skeins, at 19¼c.

That defendant delivered the 26 2s as per contract, save a lot of waste with this shipment, showing a default in the shipment of $10.50; but failed and refused to deliver the 10,000 pounds of 24, as agreed by terms of contract; that plaintiff had sold the order of yarn to other parties, and, by reason of defendant's failure to supply same as per contract, plaintiff was forced to go into the market and buy the same at the price of 23c.—at a loss of 4¼c. over the bargain price; and plaintiff thereupon claimed

Damage of 4¼c. on 10,000 lbs. 24........$425.00
Waste on shipment 26....................  10.50
Overdraft on same ......................   3.00

Defendant denied any claim by reason of waste or over-draft; denied any increase in market price of this yarn; denied that plaintiff was forced to buy at an advance price of 23c. per pound, and by way of counter-claim alleged that the 26 2s were shipped to plaintiff, not by way of absolute sale, but to be sold on commission; and that plaintiff had sold 26 at an advanced price, and defendant demanded the amount realized therefrom, over and above commissions and costs, as a counter-claim.

Plaintiff, by leave of Court, at the next term entered a formal denial to this counter-claim, and defendant excepted.

On issues submitted and considered material to the questions involved in this appeal, the jury by their verdict have established:

1. That the contract was one for an absolute sale. 2. That the same was broken by defendant. 3. That the market price of yarns at the time of the breach was 22c. per lb., being 3¼c. over the bargain price. 4. That the plaintiff had resold the yarn in reliance on this contract; and to make good their own sales was compelled to repurchase yarns at the price of 23c. per lb. 5. That defendant after breach had notice of these contracts of plaintiff and were given opportunity to deliver the yarns before plaintiff bought at 23c., and after they received notice of the obligation on plaintiff. 6. That the amount due plaintiff by reason of waste and overdraft was $8.69.

On the verdict, the Court gave judgment against defendant for:

Damage at 4¼c. per lb., estimated at 23c.,
    the amount plaintiff was compelled to pay, $425.00
Amount for waste and overdraft . . . . . . . . . .     8.69
                                                   ———————
                                                   $433.69

Defendant excepted and appealed.

HOKE, J., after stating the case: There is no merit in the exception of defendant to the refusal of the Judge below to enter judgment by default on his counter-claim. In the first place, pursuant to leave given by the Court, a formal denial was entered, and the order allowing such denial was in the sound discretion of the Judge below. Revisal 1905, sec. 512.

Again, the plaintiff's cause of action set out in the complaint was, in itself, a direct denial of the counter-claim.

The complaint alleged a contract of sale and a breach thereof on the part of defendant.

Defendant denied that this was an absolute sale; and speaking to the same transaction, alleged, by way of counter-claim, a consignment of goods for sale and demanded an account.

The one was in direct contradiction of the other, and a judgment by default on the counter-claim before the issues in reference to plaintiff's cause of action were determined would have been irregular and improper. *Phipps v. Wilson,* 125 N. C., 106.

This being the only relevant exception, there is, therefore, no valid objection shown to the verdict as rendered by the jury.

We think, however, that on this verdict the judgment against defendant should have been entered for $333.69, the difference between the contract price and market value at the time and place when the goods should have been delivered, adding the $8.69 found to be due by reason of default in another shipment, instead of $433.69, estimated on the difference between the contract price and the amount plaintiff was compelled to pay for yarn in order to make good contracts of sale between him and other parties, and under the circumstances established by the verdict.

In *Hosiery Co. v. Cotton Mills,* 140 N. C., 454, we stated the rule to be "That on failure by the bargainor to deliver

goods having a market value, the measure of damages is the difference between the contract price and market value at the time when and place where the goods should have been delivered by the terms of the contract." This follows from the principle, generally recognized and accepted, that damages for breach of contract are such as are the natural and probable results of the breach according to the usual course of things.

In goods having a market value like these and usually procurable, the probable loss occasioned by a breach of the contract in the ordinary and usual course of things would be the sum required to buy other goods of like kind and at the market price. *Hadley v. Bauxendale,* Exch., 341; *Lumber Co. v. Iron Works,* 130 N. C., 584; *Critcher v. Porter Co.,* 135 N. C., 542.

If the plaintiff seeks to recover different and additional damages arising by reason of special circumstances, he is required to show that defendant had knowledge of these circumstances, and of a kind from which it could be fairly and reasonably inferred that the parties contemplated that they should be considered as affecting the question of damages. Tiffany on Sales, 239; Wood's Mayne on Damages, sec. 20; *Van Lindley v. Railroad,* 88 N. C., 547; *Booth v. Milling Co.,* 60 N. Y., 487.

It is not established by this verdict, nor is it declared anywhere in this record, that the defendant at the time the contract was entered into had any knowledge of special sales made by plaintiff dependent on this contract, or otherwise. And if it be conceded that a general perusal of the pleadings and evidence would disclose a general knowledge on the part of defendant that plaintiff was buying the goods to sell again, here too, in the absence of special circumstances, the method of computing plaintiff's profits or loss would be the difference between the contract and market value; and any special

price paid by plaintiff to cover against his own sales could only be considered as evidence on the question of market value. *Lewis v. Rountree,* 79 N. C., 122; *Marsh v. Patterson,* 67 Conn., 473.

On what principle should plaintiff be allowed to recover in this case on a basis of 23 cents per pound, when the market value was 22 cents? If he paid this extra cent because of some "corner" of or on the market, such a price, paid by reason of abnormal conditions, would not ordinarily be the correct basis for determining the damage.

As said by *Agnew, Judge,* in *Kountz v. Kirkpatrick,* 72 Pa., 384: "It is the market value, and not necessarily the price paid, that should determine the amount." The price paid being evidence on that question. *Marsh v. Patterson, supra.*

Or if plaintiff, after he was aware of a definite breach of contract, delayed and neglected to purchase against his own sales till there had been an additional rise of the market, an increase of damage on this account should not be allowed him.

It is an established principle that when there has been a breach of contract definite and entire, the injured party must do what fair and reasonable business prudence requires to save himself and reduce the damage, or the damage which arises from his own neglect will be considered too remote for recovery.

As is said in Benjamin on Sales (7 Ed.), p. 934: "In every case, the buyer, to enable him to recover the full amount of damages, must have acted throughout as a reasonable man of business and done all in his power to mitigate the loss."

And in Sedgwick on Damages, vol. 1, sec. 201: "The same principle which refuses to take into consideration any but the direct consequences of an illegal act is applied to limit the damages where the plaintiff, by using reasonable precautions, could have reduced them." And again, at sec.

202: "It is frequently said that it is the duty of the plaintiff to reduce the damages as far as possible. It is more correct to say that by consequences which the plaintiff, acting as prudent men ordinarily do, can avoid, he is not legally damaged. Such consequences can hardly be the correct or natural consequence of the defendant's wrong, since it is at the plaintiff's option to suffer them. They are really excluded from the recovery as remote. In this view the doctrine would rest on the intervention of the plaintiff's will as an independent cause. *Ad hoc* he is not damaged by the defendant's act, but by his own negligence or indifference to consequences."

If, therefore, the plaintiff, at the time of the breach of contract, in the exercise of reasonable business prudence, could have saved himself this increase of damage by then making purchases against his own sales, he should have done so, and the increased damage incident to such failure will not be awarded against defendant.

We are not inadvertent to the finding that after the breach of contract the defendant had notice of plaintiff's collateral sales in time to have shipped the goods, and saved this extra loss. This fact might be a relevant circumstance if the contract was in the course of performance, and the contract relation still subsisted.

Such a suggestion was made by *Bramly, Baron,* in case of *Gee v. Railway,* 6 Exch., 211, referred to in Wood's Mayne on Damages; and the principle may have been applied in subsequent decisions; but no such conditions exist in the present case.

As heretofore suggested, the obligation of the contract had matured and the breach was absolute, causing an entire severance of the contract relations.

Defendant has never, for an instant, changed his attitude about the matter. He has maintained all along that the transaction was a consignment of goods for sale, and that he

had a right to terminate the relation whenever he saw proper. The jury have determined this against him; but he has never requested any postponement or indulgence, or indicated in any way that he intended to comply with plaintiff's demand.

In such case the notice of special circumstances required to fix a party with special and increased damage means notice given or knowledge had at the time the contract was entered into; and notice given after the contract was definitely and completely broken would not avail to enhance the damages.

As said by *Chief Justice Andrews* in delivering the opinion of the Court in *Marsh v. Patterson et al., supra:* "Notice to defendants after the contract was entered into would not increase their liability. If these subsales could not reasonably be considered to have been in contemplation of the parties at the time they made the contract, then the defendant could not be made responsible for special profits to be derived therefrom."

We are of opinion, therefore, and so hold, that on the facts established by the verdict, the correct rule for awarding the damages is the difference between the contract price and market value as fixed by the jury, and, applying this rule, that the judgment should be reduced $100 as of the time when the same was first rendered.

Modified and Affirmed.