B. R. HARRELL v. C. D. BRINKLEY AND M. L. BRINKLEY.

(Filed 11 October, 1922.)

**1. Contracts—Breach—Damages—Loss of Business—Profits Prevented—Duty of Damaged Party—Rule of Prudent Man.**

Where a party to a contract willfully interferes with the other party and wrongfully causes him to quit operation, or prevents him from filling it, which results in loss to his established business and property used in his undertaking, the party so injured may recover in his action such damages as may reasonably be shown as a result of the wrong done him, including profits prevented thereby, after deducting therefrom such amount of the loss as he might have avoided in the exercise of ordinary business prudence.

**2. Same—Evidence.**

Where a party to a contract may recover for the loss to his established business wrongfully caused by the breach of the other party, evidence of past profits may be shown as an element for the jury to consider in passing upon the issue, with the other facts in evidence.

**3. Same—Nonsuit—Trials—Punitive Damages.**

The evidence in this case held sufficient to be submitted to the jury upon the question whether the defendants wrongfully prevented the plaintiff from fulfilling his obligation under a contract with him, within the life of the contract, causing loss to his business, etc., and the defendant's

position that the loss was caused by the plaintiff's weakly submitting to the defendant's acts instead of asserting his rights is untenable. *Semble*, the plaintiff was entitled to recover punitive damages had he chosen to assert them.

APPEAL by plaintiff from *Allen, J.,* at May Term, 1922, of BERTIE.

*Gillam & Davenport, Roswell C. Bridgers, and S. Brown Shepherd for plaintiff.*
*W. H. S. Burgwyn and Winston & Matthews for defendants.*

PER CURIAM. This action was brought to recover damages for the alleged breach of a contract for the sale of a sawmill and a lease of land, plaintiff alleging that defendants had wrongfully interfered with his business, and broken it up, and by their illegal conduct had compelled him to abandon the lease, his business and lease being valuable and profitable, plaintiff having paid $1,000 for the mill and lease of land on which it stood. Issues were submitted on the pleadings, and the jury returned the following verdict:

"1. Did the defendants breach their contract with the plaintiff, and wrongfully interfere with plaintiff, thereby putting an end to the said contract?  Answer: 'Yes.'

"2. If so, what damage has plaintiff sustained by reason thereof? Answer: '$300.' "

Judgment for plaintiff on verdict, and defendants appealed.

The plaintiff claimed that he was to keep the plant on defendants' land and operate it until the following January—about a year—while defendants alleged that he was to have only a month or two to operate and remove it.

There were several exceptions to evidence, but all untenable. It was competent to show the value of the plant, lease, and business. In other words, it was competent and relevant to show the loss sustained by plaintiff by the alleged wrong of the defendants in breaking up his business and forcing him by their interference to quit the premises. There was a question about the plaintiff's duty to insure the premises, which they alleged to have been part of the contract, but which was denied by the plaintiff, and the jury evidently found with the latter as to this matter. "The reputation and credit of a man in business is of great value, and is as much within the protection of the law as property or other valuable rights. Where the defendant has maliciously and by his wrongful act destroyed the business, credit, and reputation of the plaintiff, the law will require him to make good the loss sustained. As a general rule, the loss of profits to a business which has been wrongfully interrupted by another is an element of damages for which a recovery may be had,

40—184

where such profits can be made to appear with reasonable certainty; but the evidence must afford the jury some data from which they can with reasonable certainty determine the loss. Outside of this rule, no certain guide for estimating such damages can be established." 13 Cyc., p. 57. And again: "Past profits cannot be taken as an exact measure of future profits; but all the various contingencies by which such profits would probably be affected should be taken into consideration by the jury. Where an established business is wrongfully injured, destroyed, or interrupted, the owner of such business can recover damages sustained; but in all such cases it must be made to appear that the business which is claimed to have been interrupted was an established one; that it had been successfully conducted for such a length of time and had such a trade established that the profits thereof are reasonably ascertainable. Where a new business or enterprise is floated and damages by way of profit are claimed for its interruption or prevention, they will be denied for the reason that such business is an adventure, as distinguished from an established business, and its profits are speculative and remote, existing only in anticipation." 13 Cyc., pp. 58 and 59. "In many jurisdictions evidence of profits which would probably have been received is admissible, not as the measure of damages, but as affording the best guide or aid to the jury of which the nature of the case admits in the exercise of a proper discretion in estimating the damages; and for like purpose evidence of the actual past profits and receipts is ordinarily admissible, if not too remote from the injury or wrong complained of." 13 Cyc., p. 213. The evidence is received, not for the purpose of showing what profits were lost with a view of allowing the plaintiff to recover the amount of them, but as some evidence to be considered by the jury, with other facts and circumstances in the case, in order to estimate the damages suffered by the wrongful acts of the defendants. And it was evidently in this view that his Honor, Judge Allen, admitted the evidence, as the charge of the court tends to show. But his Honor's instructions as to damages were distinctly favorable to the defendants in another respect, as he charged them carefully and correctly as to plaintiff's duty to minimize the damages. It is an established principle that when there has been a breach of contract definite and entire, the injured party must do what fair and reasonable business prudence requires to save himself and reduce the damage, or the damage which arises from his own neglect will be considered too remote for recovery. *Tillinghast v. Cotton Mills,* 143 N. C., 273. As is said in Benjamin on Sales (7 ed.), p. 934: "In every case, the buyer, to enable him to recover the full amount of damages, must have acted throughout as a reasonable man of business and done all in his power to mitigate the loss." And in Sedgwick on Damages, vol. 1, sec. 201: "The same principle which

refuses to take into consideration any but the direct consequences of an illegal act is applied to limit the damages where the plaintiff, by using reasonable precautions, could have reduced them." And again, at sec. 202: "It is frequently said that it is the duty of the plaintiff to reduce the damages as far as possible. It is more correct to say that by consequences which the plaintiff, acting as prudent men ordinarily act, can avoid, he is not legally damaged. Such consequences can hardly be the correct or natural consequence of the defendant's wrong, since it is at the plaintiff's option to suffer them. They are really excluded from the recovery as remote. In this view the doctrine would rest on the intervention of the plaintiff's will as an independent cause. *Ad hoc* he is not damaged by the defendant's act, but by his own negligence or indifference to consequences." The court in this case charged the jury substantially in accordance with and with reference to these principles.

We are unable to agree with the defendants that there is no evidence of any actionable breach of contract, or tort, in interfering with the plaintiff's business, and we are disposed to believe that upon the authorities, as we understand, the judge might have gone further, and permitted the jury, in the exercise of their sound discretion, to have assessed punitive or exemplary damages, if plaintiff had seen fit to ask for such an instruction. The jury have found that plaintiff's statement of the contract was the correct one, and that he was entitled, under the same, to occupy the land until the first day of the following January. If this be so, there is some evidence indicating that defendants were willfully if not maliciously attempting all the time to embarrass and harass the plaintiff in his operations, so as to get rid of him long before his time was up. But the plaintiff asked for no such instruction, being contented with compensatory damages, though small and inconsiderable they were, as allowed by the jury.

Reading plaintiff's testimony, as it appears in the record, we infer, and the jury found, no doubt, that there was some physical interference with plaintiff. One of the defendants (C. D. Brinkley) drew his pistol and ordered logs to be changed so that his own would have the preference of others in the sawing, and the negro employee obeyed him, and arranged the logs as Brinkley ordered him to do, whereas plaintiff testified that Brinkley's logs had not been misplaced. The Brinkleys seemed to act as if they had the present right of possession to the mill and premises, and attempted to exercise authority over the same, as the jury might well have inferred from the evidence, and especially that of the plaintiff.

The defendants will not be permitted to excuse their interference upon the ground that plaintiff should not have yielded to them, or been intimidated by them. This would be taking an undue advantage of their own

wrong, for they succeeded in accomplishing their purpose by reason of it, and now seek to avoid its consequences by relying on plaintiff's alleged weakness in being influenced and overcome by it, instead of asserting and defending his own rights under the contract and resisting the defendants' invasion of them.

The case has been tried with substantial accuracy, and there is no reversible error.

No error.