## GEORGE v. CROWDER et al.

(Circuit Court of Appeals, Fourth Circuit. February 16, 1923.)

No. 2057.

1. **Sales ⚖➔363—Facts held to entitle seller to directed verdict for balance due on purchase-money note.**

Where it was undisputed that the note sued on was the balance due on the purchase price of cotton selected by defendant from the stock in plaintiff's warehouse and placed in a bonded warehouse to secure the payment of the note, and no attack was made on the regularity of the resale of the cotton after default in payment of the note, and no objection made as to the quality, grade, or character of the cotton, plaintiff was entitled to a directed verdict for the amount of the note, less the amount realized by the sale of the cotton, unless defendant's counterclaims constituted a valid defense.

2. **Evidence ⚖➔441(9), 445(2)—Oral representations, made before or after contract, inadmissible, where written contract contains express warranty.**

Where a written contract for the sale of cotton contained an express warranty of quality, oral representations as to the quality of the cotton cannot be shown, since if they were made before the written contract they were merged therein, and if made after the contract they are excluded because tending to set up a special warranty not contained in the contract.

3. **Sales ⚖➔273(5)—Buyer, selecting cotton from larger quantity, cannot claim implied warranty.**

A buyer cannot claim an implied warranty of fitness for purpose in a sale of cotton in bales, which was necessarily by sample because of the difficulty of knowing the contents of the bales, where the buyer himself selected the bales he desired from a larger quantity of cotton in the seller's warehouse, when only the warehouse employees were present to represent the seller.

4. **Sales ⚖➔442(2)—Buyers can recover for breach of warranty only difference between value as warranted and as delivered.**

A buyer can recover, for breach of warranty as to the quality of the cotton sold and for misrepresentations with reference thereto, only the difference between the value of the cotton sold and of the article actually delivered at the time and place of delivery, so that, where the evidence showed the cotton delivered was worth one-half the amount paid for it, he cannot recover more than one-half of the purchase price.

5. **Sales ⚖➔442(5)—Buyer cannot recover damage to business by using inferior cotton.**

A buyer of cotton for manufacture cannot, after retaining the cotton and using it with other cotton and selling the product, recover from the seller for breach of warranty of quality the amount his business was damaged by the sale of the inferior product.

In Error to the District Court of the United States for the Western District of North Carolina at Greensboro; James E. Boyd, Judge.

⚖➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action at law by L. F. Crowder and another, partners trading and doing business under the name and style of L. F. Crowder & Son, against John J. George, trading and doing business under the name and style of the Vivian Cotton Mills. Judgment for plaintiffs on directed verdict, and defendant brings error. Affirmed.

John M. Robinson, of Charlotte, N. C. (O. L. Sapp, of Greensboro, N. C., C. B. Fetner, of Cherriville, N. C., and R. R. King and R. R. King, Jr., both of Greensboro, N. C., on the brief), for plaintiff in error.

Charles W. Tillett, of Charlotte, N. C. (Thomas C. Guthrie, of Charlotte, N. C., on the brief), for defendants in error.

Before WOODS and WADDILL, Circuit Judges, and WEBB, District Judge.

WADDILL, Circuit Judge. This is a writ of error to a judgment of the United States District Court for the Western District of North Carolina, at Greensboro, rendered on the 14th day of June, 1922. The defendants in error were plaintiffs, and the plaintiff in error defendant in the District Court, and will hereinafter be referred to as plaintiffs and defendant.

The suit was instituted at law to recover the sum of $16,800, with interest, for an alleged balance due upon a note for that amount, dated September 17th, 1920, payable 30 days after date. The facts of the case may be briefly stated as follows:

The plaintiffs, L. F. Crowder & Son, cotton merchants, of Abilene, Tex., on the 14th of May, 1920, contracted to sell to the defendant 200 bales of cotton, covered by contracts of sale "C 290 and C 291"; each contract being for 100 bales, grade type Nancy, price 35 cents per pound, shipments to be made under the first numbered contract the last week in June, 1920, and under the second about the middle of July, 1920, to the Vivian Cotton Mills, Cherryville, N. C., freight paid or allowed to Cherryville, N. C., to be reimbursed by draft on First National Bank of Cherryville, actuals (that is, samples) to be submitted before cotton shipped. Among other conditions of the contracts, it was prescribed that:

"Save as otherwise-herein provided, it is agreed that the rules known as the Carolina Mill Rules of 1915 are to govern and are hereby made a part of this contract."

These contracts were duly forwarded by the plaintiffs to the defendant, through the George F. McKenzie Agency, Charlotte, N. C., C. B. Bryant, agent, and the samples of cotton were likewise forwarded as contemplated by the contracts of sale. Defendant insisted that the samples were not up to the representations made at the time of purchase, and instructed plaintiffs not to ship the cotton. The same, however, was shipped over the protest of the defendant, who refused to pay for it, and suit was threatened to enforce the claim. This was about the 20th of July, 1921, and Mr. Crowder, Sr., one of the plaintiffs, who had effected the sale to the defendant, had an interview with the latter, and informed him that he had shipped the cotton to Charlotte, N. C., where he had a whole lot of other cotton, and he re-

quested the defendant to come down and look through the cotton and select what he could use.

Subsequently the defendant George, about the 17th of August, 1920, took his brother and a nephew, who were experienced cotton manufacturers, with him to Charlotte, to look at the cotton as requested, and Mr. Crowder, Sr., had the cotton trucked out in order that the same might be sampled, and the same was sampled as brought out. The warehouse was dark, but lighted with electricity. One hundred twenty bales of cotton were selected for purchase, after some 240 to 250 had been examined. Mr. Crowder urged the sale of the cotton, and commended the same. Purchase was thereupon made of the 120 bales of cotton, the defendant executing a note for $21,802, the purchase price, at 30 days, and the 120 bales were deposited in a storage warehouse on account of the defendant, and as security for the note. On or about the 17th of September, 1920, something over $5,000 was paid on account of the note, and a new note dated September 17, 1920, at 30 days, for $16,800, was given, and it is for the amount due on this note, less a credit of $4,719.09 as of February 5, 1921, being the proceeds of the sale of the cotton deposited in the warehouse as security, that this suit was brought.

The defendant was urged to buy more cotton up to the full 200 bales, which he did not do, the plaintiffs still commending the cotton in the matter of grade and quality. Later on plaintiffs informed defendant that they had more cotton at Charlotte, and wanted him to come down and see and select the balance of the shipment, and Mr. George again took his nephew with him to Charlotte, and selected 60 more bales, to obtain which they had to go through nearly 300 bales. On this occasion, Mr. George, his nephew, and a Mr. Summers, who used to work for Mr. George at the mill were present. None of the plaintiffs were present; only some of the warehousemen. Defendant determined to take 60 bales selected by him, and gave an acceptance therefor for $10,718.05, dated September 21, 1920, at 60 days. The cotton was shipped from Charlotte to Cherryville, arriving there on the 25th of September, 1920, and the acceptance was paid at maturity, or several days thereafter, through the bank at Cherryville, the cotton having been used in defendant's business, after the receipt of the same on the 25th of September, and before the payment of the draft on the 5th day of November, 1920.

Upon the institution of this suit on the 19th of January, 1921, to recover the balance due on the renewed note of September 17, 1920, the defendant appeared, and while admitting the execution of the note for the amount therein mentioned, interposed as defenses two counterclaims, each alleging damages in the sum of $30,000, one based upon the alleged breach of warranty by the plaintiffs in the sale of the 60 bales, and the other for the false representations in connection with the same. Issue was joined upon these pleadings, testimony adduced, and thereupon the court overruling certain prayers requested by the defendant to be submitted to the jury, directed the following issues to the jury: First, in what sum, if any, is the defendant indebted to the plaintiff on account of the note sued on? Second, in what sum,

if any, are the plaintiffs indebted to the defendant, on account of the counterclaims set up in the defendant's answer—with an instruction on the part of the court to answer the first issue by a verdict for the plaintiffs of $16,800, with interest from October 17, 1920, subject to a credit of $4,719.09, as of February 5, 1921, and on the second issue nothing. The court, having so instructed the jury and they having rendered their verdict in accordance with such instructions, entered judgment in favor of the plaintiffs against the defendant for the amount specified in issue No. 1, from which action the writ of error in this case was sued out.

Several assignments of error are made: First, to the failure of the District Court to submit to the jury the questions arising upon the defendant's defenses of breach of warranty, and false representations set up in his counterclaims; secondly, to the failure of the court to admit testimony relative to damages alleged to have been sustained by the defendant in the sale of his cotton to one of his customers, William Whitman & Co. The third and fourth assignments involve the same question substantially, viz. in directing a verdict for the plaintiffs and the amount to be awarded. The fifth is to the order of the court in instructing a verdict against the defendant. These assignments will be passed upon in inverse order, the last three being considered together.

[1] First. Were the plaintiffs entitled to recover the balance due on the note sued on, for which a verdict was instructed in their favor? Manifestly, they were, and the defendant was not entitled to an instruction in his favor, unless it be that the causes of action set up in the counterclaims, constituted a valid defense to the suit. The circumstances here are unique. The cotton contracted for under the contracts of May, 1920, was furnished, objected to, and taken back, and if the provisions and limitations of the May contracts apply to the cotton actually purchased and delivered, they do so only incidentally. The sale of the 120 bales of cotton on or about August 17, 1920, for which the original note of $21,802, at 30 days, was given, leaving the amount due thereon specified in the judgment, was made after full examination of the 120 bales purchased, and the cotton delivered and placed in a bonded warehouse as collateral security for the amount due on this debt, where it was allowed to remain until sold after default of the defendant to pay the same. The sale seems to have been had in due course of business, under warehouse regulations, and at all events no suggestion of wrongdoing is made in connection with the resale, under the warehouse certificate. The defendant interposed no objection to the sale, nor as to the quality, grade, or character of the cotton, and no such defense has ever been interposed, nor is the same made here; the defense in this case being based upon alleged damages arising from the sale of 60 bales of cotton purchased 30 days after the 120 bales transaction took place, which 60 bales were promptly delivered to the defendant, paid for in due course, and have been used in his business.

[2] The quality of the 60 bales of cotton had no relation to that of the 120 bales for which the note in suit was given. It was not taken from the same lot, and as shown by the defendant's own testimony,

before he concluded to make the latter purchase, he was advised they had gotten in more cotton. If the contracts of May, 1920, referring to the original 200 bales, should be deemed to be alive and applicable to the subsequent sale, then it is quite apparent, under the express warranty given as to the quality of the cotton sold, in the various conversations indulged in between the plaintiff Crowder and the defendant George, that they would be merged in the contract, if made before, and excluded if made after the same (De Witt v. Berry, 134 U. S. 306, 10 Sup. Ct. 536, 33 L. Ed. 896; Wrought Iron Co. v. Graham, 80 Fed. 474, 25 C. C. A. 570; Bowser v. Tarry, 156 N. C. 35, 72 S. E. 74), because it would tend to set up a special warranty which was not provided for in the contract, and that so far as a warranty express or implied is concerned, as bearing upon the quality of the cotton sold, it only has relation in this pleading to the 60 bales bought and paid for, and used in the defendant's business, months after the contracts for the 200 bales were made.

Second. Was there error in the court's action in respect to the counterclaims for damages, arising out of the 60 bales purchased on the 17th of September, 1920? We think not. The circumstances under which this sale was made precludes the giving of an express warranty as to the quality of the cotton, or a false representation made regarding the same, as neither the plaintiffs nor their representative, other than warehouse laborers, were present. The 60 bales were picked out by the defendant and his expert representatives, they examining some 250 to 300 bales of cotton before selecting the 60 bales desired, which the defendant duly purchased and accepted, executing his obligation therefor, which in due course of business was paid, and not until the institution of this suit, and the filing of these counterclaims months afterwards, was the claim asserted.

[3] The defendant, however, insists that although no express warranty in terms, or false representations may have been made at the time of the sale of the 60 bales of cotton, because of the absence of the plaintiffs and their representatives, still that there was an implied warranty that the cotton was reasonably suitable for the purposes for which it was bought, and that contract of sale by sample was necessarily in contemplation of the parties, as it would not be possible otherwise to ascertain the contents of the bale, and in support of that contention on the latter proposiion, cites Dushane v. Benedict, 120 U. S. 630, 7 Sup. Ct. 696, 30 L. Ed. 810; Beebee v. Robert, 12 Wend. (N. Y.) 413, 27 Am. Dec. 132; Lewis v. Rountree, 78 N. C. 323; Love v. Miller, 104 N. C. 582, 10 S. E. 685. These cases will be found not to militate against the conclusions we have reached under the facts of this case. Generally, it may be conceded that the sale of cotton by the bale, contemplates the sampling thereof, because of the difficulty of knowing the contents of the bale. Still, that should not enable the defendant under the facts here, to escape liability when he of his own accord, with his own experts, in the absence of the plaintiffs or their representatives, picked out from a very large quantity of cotton the 60 bales desired, handling in connection therewith some 300 bales, and caused the same to be shipped to his mill, where it was received on Sep-

tember 25, 1920, and gave his acceptance therefor on his bank at 60 days, and several days after its maturity, to wit, on the 5th day of November, 1920, it was taken up through his bank and paid. In the meantime, the 60 bales had been used by the defendant in his mill.

The defendant admits that a few days after the receipt of the cotton at his mill, he discovered the defects of which he complains, but nevertheless continued to use, and did use the entire 60 bales, resorting, as he claims, to the method of using 4 bales of other cotton to one of this, in order to make the 60 bales useful, and that he sold and disposed of the product thus obtained in his business. The acceptance by the defendant of the cotton under these circumstances, and his use of the same, with full knowledge of its alleged defects, and his failure to refuse to use the same, and call the attention of the plaintiffs to its condition, and insist upon a revocation of the sale, clearly disentitles him to the right to offset the alleged damages for false representation and breach of warranty as a defense to an entirely different transaction, upon the theory that although there was confessedly no express warranty or false representation made in connection with the sale, that the same relief can be secured as upon an implied warranty, because of the unsuitable character of the cotton for the purposes for which it was purchased. It may be seriously doubted, having declared on the breach of an express warranty and false representations by the plaintiffs, whether the defendant will be allowed to raise the same questions upon the theory of an implied warranty. Lindley v. Hunt (C. C.) 22 Fed. 52; Reynolds v. General Electric Co., 141 Fed. 551, 73 C. C. A. 23; Hight v. Bacon, 126 Mass. 10, 30, 30 Am. Rep. 639; Dounce v. Dow, 64 N. Y. 411; Rocchi v. Schwabacher, 33 La. Ann. 1364; McCaa v. Elam Drug Co., 114 Ala. 74, 21 South. 479, 62 Am. St. Rep. 88; Horwich v. Western Brewery Co., 95 Ill. App. 162; Cafre v. Lockwood, 22 App. Div. 11, 47 N. Y. Supp. 916.

Reliance is placed by the defendant in error upon the clause in the contract respecting the rule of the Carolina Cotton Mills as controlling in the interpretation of the contract. We do not deem it necessary to rely upon this rule in reaching our conclusion herein.

[4] This case affords a striking illustration of why the law does not allow a vendee to adopt and pursue the course taken here, with the chance of profit to himself, if successful, and visiting the consequences of failure upon the vendor. The rule is well settled as to what damages may be recovered upon breach of warranty in the quality of goods sold, and false representations in respect thereto, namely, that the buyer may recover the difference between the actual value of the article sold, and of the article delivered, at the time and place of delivery. Johnston Mfg. Co. v. Wilson, 269 Fed. 505 (a decision by this court by Judge Woods); Lunn v. Shermer, 93 N. C. 169.

The defendant's testimony is that the agreed price of the cotton was 35 cents a pound, and that at the time he got it (which was only several days thereafter), it was reasonably worth 14 cents or 15 cents "or something like that." Had the defendant then and there refused to accept the cotton, promptly advising the plaintiffs of the inferior character of the same, his measure of damages, if any, from the most fa-

vorable viewpoint, would have been limited to, approximately, one-half of the purchase price of the cotton; that is, one-half of the $10,718.05 he paid therefor. The defendant elected to use the cotton without complaint to the plaintiffs, resorting to a method of mixing it with other cotton at the rate of 1 bale to 4, and thus using up the entire 60 bales subsequently paid for the same, and is now seeking by way of counterclaim to recover $30,000 damages to his business for thus using cotton claimed by him to be unfit for use, and to offset the amount against other obligations he confessedly owes the plaintiffs.

[5] There are many reasons why this cannot be done. First, it denies opportunity to the plaintiff to know exactly what the condition of his cotton was, and likewise affords no chance to know with what it was mixed. It does not necessarily follow that the plaintiff's cotton was the only inferior cotton used. Moreover, it enabled the defendant to escape the first duty imposed upon him in connection with the transaction, viz. to minimize the damages as far as possible. This duty the law clearly placed upon him. 24 R. C. L. 268; Railroad Co. v. Hardware Co., 143 N. C. 54, 55 S. E. 422; Tillinghast v. Cotton Mills, 143 N. C. 268, 273, 55 S. E. 621; Mining Co. v. Machine Co. (C. C. A. 6th Cir.) 258 Fed. 1, 169 C. C. A. 139; Ft. Morgan S. S. Co. v. Balto. & Jamaica Trading Co. (C. C. A.) 284 Fed. 1. And he will not be allowed to escape responsibility by entering upon the enlarged, if not questionable, undertaking of mixing up good and indifferent raw material and manufacturing the same into a product for sale to his customers. Clearly damages of the character arising from this sort of transaction, reaching the fancy figure of $30,000, cannot be recovered, and are not such as the law would sanction as properly recoverable; that is, such as were within the reasonable contemplation of the parties at the time of making the contract. Hadley v. Buxendale, 4 Exch. 341; Howard v. Stillwell, 139 U. S. 199, 206, 11 Sup. Ct. 500, 35 L. Ed. 147; Primrose v. Western Union Tel. Co., 154 U. S. 1, 29, 14 Sup. Ct. 1098, 38 L. Ed. 883; Hosiery Co. v. Cotton Mills, 140 N. C. 454, 53 S. E. 140; Tillinghast v. Cotton Mills, 143 N. C. 268, 55 S. E. 621.

Mr. Justice Gray, speaking for the Supreme Court, in Primrose v. Western Union Tel. Co., 154 U. S. 29, 14 Sup. Ct. 1106 (38 L. Ed. 883) citing with approval the leading English case, decided by Baron Alderson, of Hadley v. Buxendale, supra, 4 Exch. 341, aptly states this doctrine as follows:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally; i. e., according to the usual course of things, from such breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

Ordinarily, damages are limited to such as arise out of the particular contract on which the action is founded, and such as grew out of collateral transactions and undertakings of the character involved here,

consequent upon the manufacture of a large quantity of cotton with other cotton, cannot be recovered, and the right to do so should be denied, if for no other reason than because they are too remote and speculative, and cannot be demonstrated to have resulted from the cotton sold by the plaintiffs. 35 Ency. of Pl. & Pr. 465, 472; 17 C. J. 746, 748.

Under the conclusion herein announced, the court properly excluded the testimony offered in evidence bearing upon the sale to William Whitman & Co. of some of the goods claimed to have been manufactured from the plaintiff's cotton, intermixed with that of others, and likewise correctly refused to submit the questions arising on the counterclaims to the jury, and in directing a verdict against the defendant.

It follows, from what has been said, that the decision of the lower court was plainly right, and should be affirmed, with costs.

Affirmed.