Alice K. SHARPE and Juanita Sharpe, by her next friend, H. L. King, Appellants,

v.

BRADLEY LUMBER COMPANY, Inc., Appellee.

No. 71-1050.

United States Court of Appeals, Fourth Circuit.

Argued May 13, 1971.

Decided July 19, 1971.

John M. Minor, Winston-Salem, N. C. (Deal, Hutchins & Minor, Fred S. Hutchins, and William Kearns Davis, Winston-Salem, N. C., on brief), for appellants.

Richmond G. Bernhardt, Jr., Greensboro, N. C., and W. F. Womble, Winston-Salem, N. C. (Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., and Womble, Caryle, Sandridge & Rice, Winston-Salem, N. C., on brief), for appellee.

Before SOBELOFF, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

SOBELOFF, Senior Circuit Judge:

This appeal presents a question of agency under the North Carolina law.

On November 26, 1966, an automobile driven by Alice Sharpe was involved in a collision with a tractor-trailer driven by Leonard Lewis and owned by R. K. Grindstaff & Son, a partnership. Mrs. Sharpe's husband and son were killed in the accident and she and her eleven-year-old daughter, Juanita, were seriously injured. This suit was instituted under diversity of citizenship in the United States District Court for the Middle District of North Carolina by Mrs. Sharpe and her daughter against Lewis, the Grindstaff partnership, and Bradley Lumber Co., seeking recovery for permanent injuries, pain and suffering, and medical expenses.[1] The complaint averred that Lewis was the agent of both Grindstaff & Son and the Bradley Lumber Company.

The District Court found Lewis guilty of negligence and entered judgment against him and the Grindstaff partnership in the amounts of $50,000 for Mrs. Sharpe and $65,000 for Juanita. Lewis and the partnership do not appeal from that judgment. The court concluded, however, that under North Carolina law Lewis was not the agent or employee of Bradley Lumber Company at the time of the accident, and accordingly dismissed the action against the company. This is the ruling the Sharpes appeal, raising the single issue of whether Lewis was Bradley Lumber Company's agent or employee as well as R. K. Grindstaff & Son's.

I

As defined by the Supreme Court of North Carolina, the test for determining the existence of a principal-agent or employer-employee relationship is "whether the party for whom the work is being done has the *right to control* the worker with respect to the manner or method of doing the work, as distinguished from the right merely to require certain definite results conforming to the contract. If the employer has the right of control, it is immaterial whether he actually exercises it." McCraw v. Calvine Mills, Inc., 233 N.C. 524, 64 S. E.2d 658, 660 (1951) (emphasis added); see also Cooper v. Asheville Citizen-Times Publishing Co., Inc., 258 N.C. 578, 129 S.E.2d 107 (1963); Hinkle v. City of Lexington, 239 N.C. 105, 79 S. E.2d 220 (1953). Thus, for example, in Graham v. Wall, 220 N.C. 84, 16 S.E.2d 691 (1941), a principal-agent relationship was found to exist despite the testimony of the employer, the employee, and the employee's supervisor, that the employer did not in fact exercise any control.

---

1. Wrongful death actions are now pending in a North Carolina state court on behalf of the personal representatives of Mrs. Sharpe's deceased husband and son.

Though no one factor is controlling, the existence of an employer-employee relationship is frequently evidenced by continuity of employment, periodic compensation on a regular basis rather than lump-sum payments for specific jobs performed, and the absence of special skill or training requirements. Hayes v. Elon College, 224 N.C. 11, 29 S.E.2d 137 (1944). In Smith v. Kappas, 218 N.C. 758, 12 S.E.2d 693 (1941), the Supreme Court of North Carolina emphasized that agency may be implied "by conduct, by the relations and situation of the parties, by acts and declarations, by matters of omission as well as commission, and, generally by any fact or circumstance with which the alleged principal can be connected and having a legitimate tendency to establish that the person in question was his agent for the performance of the act in controversy." 12 S.E.2d at 698.

## II

R. K. Grindstaff & Son were engaged in the business of sawmilling and trucking, the latter activity under the direction and control of the junior partner, Ronnie Grindstaff. In November, 1966, the time of the accident, the partnership owned three tractor-trailer units, two of which were closely tied in with the operations of the Bradley Lumber Co. One was leased to the company on a permanent basis. The other, driven regularly by Lewis, was devoted largely, though not exclusively, to hauling lumber for the Bradley Lumber Co., and was garaged at Bradley's place of business in Marion, North Carolina. It was this vehicle that collided with the Sharpes' automobile shortly after Lewis had completed delivering a load of lumber in Lexington, North Carolina for the Bradley Lumber Company. Bradley's payments for the use of the leased vehicle and for the hauling performed by Lewis amounted to nearly half the annual gross income of the Grindstaff partnership.

The business relationship among the Bradley Lumber Company, the partnership, Grindstaff, and Lewis can only be described as loose and informal, due in part perhaps to a family relationship: Pierce Bradley, the President and sole stockholder of Bradley Lumber Company, was Ronnie Grindstaff's uncle. The lines of authority were not sharply demarcated. This is well illustrated by their method of settling accounts. At the end of every week, Ronnie would meet with Pierce Bradley and his wife, who was secretary-treasurer of the company. After consulting with Lewis as to his mileage and determining the week's mileage on the leased truck, Ronnie would compute the total sum due from the company. No written statement of any kind was prepared or submitted. Ronnie would have Mrs. Bradley draw up three checks: one payable to Ronnie in the amount of $80.00; one payable to Lewis based on his work in hauling lumber for the Bradley Lumber Co. and others; and the balance payable to the Grindstaff partnership.

Lewis received his entire compensation in this manner by checks drawn by Bradley Lumber Company. The company treated Lewis as its employee. It not only carried him on its payroll, but reported him as its employee to the United States Internal Revenue Service, Social Security Administration, and the North Carolina taxing authorities. It also included him in its group hospitalization plan. Moreover, Bradley carried Lewis as an employee for unemployment and workmen's compensation purposes. By so doing, Bradley Lumber Company was under the protection that the North Carolina law affords employers—relief from unlimited liability at common law for employee injuries proximately caused by the employer's negligence. N.C.Gen. Stat. § 97–10.1 (1965). The company was reimbursed for these expenses in part, but not in full, by the Grindstaff partnership.

Lewis, for his part, reported Bradley Lumber Company as his employer in his state and federal income tax returns. Although he received instructions only from Ronnie Grindstaff, he testified

that he did not know whether he was working for Ronnie Grindstaff or Pierce Bradley. Nor did he know whether Ronnie Grindstaff was employed by Bradley Lumber Company.

Ronnie Grindstaff, as Lewis' immediate supervisor, served in a dual capacity. Not only was he a partner of R. K. Grindstaff & Son, but he was also the Vice President and a director of the Bradley Lumber Company. He reported daily at Bradley Lumber Company's yard in Marion where he would receive from Bradley the trucking orders to be relayed to Lewis for delivery. Like Lewis, he was treated as Bradley's employee for tax and accounting purposes, and Ronnie's weekly payment of $80.00 was not reported as partnership income.

■ We think that these facts ineluctably establish that Lewis was no less an employee of the Bradley Lumber Company than of R. K. Grindstaff & Son and that his negligence which brought injuries to the Sharpes is imputable to both. Although Pierce Bradley testified that he did not supervise any of Lewis' activities, we think there can be no doubt that the Bradley Lumber Company retained the right to control Lewis. If, as the appellee claims, the arrangements with respect to Lewis' employment were rooted in a desire of Grindstaff and Bradley to effect a "convenient accommodation," this does not alter the legal consequences of their agreement, particularly when the rights of innocent third parties injured by Lewis' negligence are involved.

■ We agree with the appellee that the inclusion of Lewis on the payroll of Bradley Lumber Company would not, standing alone, suffice to establish an agency relationship, Forgay v. North

Carolina State University, 1 N.C.App. 320, 161 S.E.2d 602 (1968),[2] although that fact has been given significant probative force. Lewis v. Barnhill, 267 N. C. 457, 148 S.E.2d 536 (1966); Graham v. Wall, *supra*. But when Bradley Lumber Company's consistent treatment of Lewis as its employee is combined with Lewis' regular employment in hauling lumber for the company, and the close business relationship that existed between Ronnie Grindstaff and Bradley, the conclusion is inescapable that a principal-agent relation was present. Lewis' immediate supervisor was not only a partner in a concern dependent on Bradley Lumber Company for half its income, but was the Vice President and a director of the lumber company itself. Pierce Bradley's belated disavowal of Lewis as an employee after the accident that injured the Sharpes cannot prevail over the clear evidence to the contrary in this record.

■ Nor do we think that the admission by the Grindstaff partnership that Lewis was their employee shields Bradley Lumber Company from liability. The North Carolina courts have explicitly recognized that an agent can be in the service of two principals simultaneously, provided both have a right to exercise some measure of control, and there is a common or joint participation in the work and benefit to each from its rendition. Lewis v. Barnhill, *supra;* Altman v. Sanders, 267 N.C. 158, 148 S.E.2d 21 (1966); Legette v. J. D. McCotter, Inc., 265 N.C. 617, 144 S.E.2d 849 (1965). *See* Restatement (Second) of Agency, § 226 (1958). These features were present here and the appellants are entitled to judgment against Bradley Lumber Company as well as R. K. Grindstaff & Son.

2. In *Forgay,* the North Carolina Court of Appeals reversed a determination by the workmen's compensation commission that North Carolina State University was an employer of a student working for the town of Madison under a federally-sponsored program of assistance to college students. The university's primary responsibility under the federal program was the distribution of wages. It received no services whatsoever, nor did it assume any responsibility for assigning the students to their off-campus jobs. There was even some uncertainty as to whether or not the university was aware of where the students were working. *Forgay* is clearly distinguishable from the case at hand.

156

Reversed and remanded for entry of judgment in favor of the appellants against the appellee.

WINTER, Circuit Judge (dissenting):

In my view, the district judge correctly found the facts and correctly concluded that "[s]ince Bradley Lumber Company, Inc. retained no control over Lewis or Grindstaff as individuals nor over their method of operation, the corporation cannot be considered their employer. Bradley Lumber Company, Inc., therefore, is not liable for the negligence of Lewis on November 25, 1966."

I would affirm on the district judge's opinion. Sharpe v. Grindstaff, 329 F. Supp. 405 (M.D.N.C.1970).