## CAPITOL FUNDS, INC. v. ROYAL INDEMNITY CO.

[119 N.C. App. 351 (1995)]

CAPITOL FUNDS, INC.; AND CAPITOL FUNDS OF SOUTH CAROLINA, INC., PLAINTIFFS
v. ROYAL INDEMNITY COMPANY; AND CUMMINGS LEGRAND INSURANCE
AGENCY, INC., DEFENDANTS

No. COA94-1043

(Filed 5 July 1995)

**Insurance § 930 (NCI4th)— actual and apparent authority of agent—sufficiency of evidence**

In an action to recover on a property and casualty insurance policy, the trial court did not err in submitting to the jury issues of actual and apparent authority where the evidence tended to show that defendant insurance company created a communication structure whereby (1) defendant insurer dealt with retail agents and insured through the Quaker Agency, (2) defendant Cummings LeGrand Agency dealt with defendant insurer only through Quaker, and (3) plaintiff consumer communicated only with defendant Cummings LeGrand Agency; defendant insurer considered Cummings LeGrand Agency to be its agent in connection with the general serving of its relationship with the insured and in all communications with the insured; defendant agency received an acceptable quote for coverage from defendant insurer and sent out binders for this coverage to plaintiff; these binders reflected that defendant agency had authority to act for defendant insurer; neither defendant insurer nor the Quaker Agency told defendant agency that it was not authorized to take such action; and there was no evidence that, prior to sending the binders, defendant agency was instructed that it could not act as an agent of defendant insurer.

**Am Jur 2d, Insurance §§ 119-121.**

**Liability of insurance agent, for exposure of insurer to liability, because of issuance of policy beyond authority or contrary to instructions. 35 ALR3d 907.**

Appeal by defendants from judgment entered 24 March 1994 by Judge Robert P. Johnston in Cleveland County Superior Court. Heard in the Court of Appeals 25 May 1995.

**CAPITOL FUNDS, INC. v. ROYAL INDEMNITY CO.**

[119 N.C. App. 351 (1995)]

*Caudle & Spears, P.A., by Harold C. Spears and Lloyd C. Caudle, for plaintiffs-appellees.*

*Dean & Gibson, by Rodney Dean and J. Bruce McDonald, for defendant-appellant Royal Indemnity Company.*

*Kennedy Covington Lobdell & Hickman, L.L.P., by Wayne Huckel and Amy L. Pritchard, for defendant-appellee Cummings LeGrand Insurance Agency, Inc.*

JOHNSON, Judge.

Cummings LeGrand is a general insurance agency located in Shelby, North Carolina. The owner and president of Cummings LeGrand, Stuart LeGrand, has been an insurance agent since 1971 and has operated Cummings LeGrand since 1986.

Capitol Funds, Inc. and Capitol Funds of South Carolina, Inc. (Capitol Funds) insures the majority of its property through a single insurance policy. Beginning on 1 February 1990 and continuing through the date at issue in this case, 7 July 1992, Capitol Funds insured approximately thirty pieces of improved real property under a property and casualty policy with Royal Insurance (Royal Policy). The Royal Policy procured in 1990 replaced a similar policy held with National Union. The Royal Policy was procured through Cummings LeGrand.

The building at issue in this case was a thirty thousand square foot structure, used primarily for warehousing, located on a twenty acre parcel of land near Woodruff, South Carolina. This building was destroyed in a fire. A caretaker lived on the property in a mobile home near the building. At the time of the fire, the building contained machinery and building supplies.

On 6 July 1992, the caretaker of the property came to see Mr. Royster, who runs Capitol Funds, to discuss purchasing the mobile home unit in which she and her husband lived. The discussion of the property prompted Mr. Royster to check on the status of the insurance coverage of the property. Mr. Royster was informed by Cummings LeGrand that the property was not covered under the Royal Policy. Mr. Royster realized that the building was inadvertently left off of the list of properties to be insured. As soon as he learned of the lack of coverage, Mr. Royster called Stuart LeGrand to obtain coverage for the property, but did not reach him until the next morning.

Both Mr. Royster and Mr. LeGrand acknowledged conversing on the morning of 7 July 1992. Mr. Royster spoke with Mr. LeGrand and requested coverage in the amount of $330,000.00. Mr. LeGrand verbally told Mr. Royster that the property was covered with Royal. Mr. Royster understood that the property would be added to the existing policy, which already covered substantially all of Capitol Funds' properties. Mr. LeGrand's view was that the insurance was effective when he told Mr. Royster that the building was covered and that the coverage would be through the Royal Policy.

Following his conversation with Mr. Royster, Mr. LeGrand gave the information he obtained about the property to another insurance agent in his office, Ms. Valerie McCoy, and instructed her to complete a change request form. Ms. McCoy understood that coverage with Royal was bound pursuant to an oral binder. Ms. McCoy completed a document entitled Endorsement Request-Commercial Lines, mailed the endorsement to Quaker Agency, and sent a copy by hand delivery to Capitol Funds. Ms. McCoy testified that the endorsement request form was one of several forms used to memorialize agreements binding coverage.

Mr. Royster testified that he received all communications regarding the Royal Policy from Mr. LeGrand. For example, Capitol Funds received all invoices from Cummings LeGrand and paid all premiums to Cummings LeGrand.

Mr. Royster further testified that when he needed a change to the Royal Policy, such as an addition or deletion of a property or a change in a lender beneficiary, he would obtain such changes from Cummings LeGrand. Whenever Mr. Royster requested a change from Cummings LeGrand, Capitol Funds received confirmation of the change from Cummings LeGrand within a day or so. A formal endorsement from Royal reflecting the change would arrive later, but the endorsements always showed the changes effective as of the date first specified by Cummings LeGrand.

Mr. Royster testified that requesting coverage on the Woodruff property on 7 July 1992 was handled in the same manner as all previous changes to the Royal Policy. Mr. LeGrand testified that the procedure used—submitting an endorsement request to Royal via Quaker and a copy to Capitol Funds—was the same procedure always used to obtain changes in the Royal Policy.

Mr. LeGrand stated that Cummings LeGrand always dealt with Royal through the Quaker Agency. Mr. LeGrand further testified that he thought Quaker was an authorized agent of Royal through the Quaker Agency. Mr. LeGrand further testified that he thought Quaker was an authorized agent of Royal based on past relations between the parties. No evidence was produced to show that Cummings LeGrand should have known that Quaker was not an authorized agent of Royal, and testimony revealed that the manner in which decisions regarding coverage issues were communicated and the relationship between Capitol Funds, Cummings LeGrand, Quaker and Royal was set up by Royal.

A great deal of testimony came before the court and the jury regarding the basis of Cummings LeGrand's authority to bind Royal to coverage. Although there was no written agreement that set out whether Cummings LeGrand had binding authority with Royal, Mr. LeGrand testified as follows:

Q. (by Mr. Spears): Based on your course of conduct and dealings that you had with the parties, did you believe that you were authorized by Royal to bind coverage on property such as the Woodruff, South Carolina property?

Mr. Dean: Objection.

Court: Overruled.

A. (by Mr. LeGrand): Yes, I did.

On cross-examination, Mr. LeGrand was questioned as to whether binding authority existed despite the absence of a written agreement as follows:

Q. (by Mr. Dean): So you assumed this only because you had never—you had never heard anything from them one way or the other, is that what you're saying?

A. (by Mr. LeGrand): I'm saying that's the normal course of doing business with the Quaker Agency. Issuing binders, asking for change requests, and they were all done, prior to this, the way we'd asked them to be done.

Later in his testimony, Mr. LeGrand reiterated that "[e]very change that we made in the policy was in the form of a change request which was indicating that the change had been made as of the date and every endorsement that we got from every change that we made with Quaker came back as we requested, as of the day we requested it, and the way we requested it." Mr. LeGrand also testified that the change

CAPITOL FUNDS, INC. v. ROYAL INDEMNITY CO.

[119 N.C. App. 351 (1995)]

requests submitted to Quaker were instructions to change the policy as opposed to requests that the policy be changed.

Mr. LeGrand testified that Cummings LeGrand sent out the original binders for coverage beginning in February 1990 as the authorized representative for Royal. Although Royal had already committed to issuing a policy at that point, the binders nevertheless reflected on their face that Cummings LeGrand had authority to act for Royal. A copy of the original binder was sent to Quaker (through which all dealings with Royal took place) and neither Royal nor Quaker ever told Cummings LeGrand that the agency was not authorized to take such actions. Mr. LeGrand concluded that "[i]f I didn't have the authority to issue these binders, they [Royal or Quaker] would have told me not to do it."

Mr. LeGrand explained that in any binding situation the insurance company always can come back and decline to continue the coverage, but that until such time the coverage is good. In this case, Mr. LeGrand knew that he could not override Royal's decision going forward but that, until Royal notified Cummings LeGrand differently, coverage existed on the property based upon his verbal binder.

Mr. LeGrand testified that on 7 July 1992 he asked Mr. Royster questions regarding the use of building, its construction, age, size and location. Mr. LeGrand had been down to the building several times and was familiar with the property. The building was constructed between 1976 and 1978, and was a pre-engineered metal building with a concrete floor. The building was insulated, heated and equipped with electricity and telephone. Mr. Royster testified that someone from Capitol Funds was in the building on a regular basis—sometimes as often as twice a week but no less often than once a month. In addition, the caretaker checked on the building daily.

The Royal Policy contained a provision permitting vacant buildings to be covered. Other properties under Royal Policy at the time of the fire were vacant as well. In addition, Royal had previously insured personal property located in the building in the amount of $304,000.00, and Mr. LeGrand was aware of this when he was asked to bind coverage on the building. The personal property insurance was discontinued after Capitol Funds sold most of the contents of the building in 1990. Further, Mr. LeGrand was familiar with the other thirty pieces of property under the Royal Policy and concluded that the property near Woodruff was comparable to the other properties already insured by Royal.

The issue of Royal's liability was submitted to the jury. The jury decided that Cummings LeGrand had actual authority and apparent authority. They did not answer whether Royal was entitled to be indemnified by Cummings LeGrand. In accordance with the jury's verdict, the trial court ordered that plaintiffs recover judgment in the amount of $328,800.00. The trial court also denied Royal's motions for a directed verdict and J.N.O.V. From this judgment, Royal appeals.

Defendant Royal contends that the trial court erred in submitting the issues of actual authority, apparent authority, and indemnity to the jury. We disagree.

In determining whether a trial court properly submitted an issue to the jury, the inquiry is "whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991). If there is more than a scintilla of evidence to support the elements of a particular claim, then the evidence is sufficient to go to the jury. *Guilford County v. Kane*, 114 N.C. App. 243, 441 S.E.2d 556 (1994). Furthermore, the non-moving party is allowed all reasonable inferences. *Id.*

The Supreme Court of North Carolina has held that actual authority

> may be shown by conduct, by the relations and situations of the parties, by acts and declarations, by matters of omission as well as commission, and, generally, by any fact or circumstance with which the alleged principal can be connected and having a legitimate tendency to establish that the person in question was his agent for the performance of the act in controversy[.]

*Smith v. Kappas*, 218 N.C. 758, 765, 12 S.E.2d 693, 698, *modified*, 219 N.C. 850, 15 S.E.2d 375 (1941) (*quoting Realty Co. v. Rumbough*, 172 N.C. 741, 748, 90 S.E. 931, 934 (1916)). Thus, contrary to defendant Royal's contentions, a written instrument is not necessary to create actual authority. *Id.*

The evidence shows that defendant Royal's underwriter, Michael Adamson, testified that Cummings LeGrand was defendant Royal's agent for purposes of servicing the policy, including changing provisions in the policy; that when Cummings LeGrand received an acceptable quote for coverage from Royal in 1990, it sent out binders for this coverage to Capitol Funds and to certain mortgagees, as authorized representative for Royal; that the binders reflect that Cummings LeGrand had authority to act for Royal; that a copy of the

original binder was sent to Quaker and neither Royal nor Quaker told Cummings LeGrand that the agency was not authorized to take such actions; that no evidence was produced to show that prior to 7 July 1992 Cummings LeGrand was instructed that it could not act as an agent of defendant Royal; that defendant Royal created a communication structure whereby (1) Royal dealt with retail agents and insured through the Quaker Agency, (2) Cummings LeGrand dealt with Royal only through Quaker and (3) the consumer, Capitol Funds, communicated only with Cummings LeGrand; and that Royal considered Cummings LeGrand to be its agent in connection with the general serving of its relationship with the insured and in all communications with the insured.

Thus, the evidence viewed in the light most favorable to Cummings LeGrand and Capitol Funds shows that there was more than a scintilla of evidence to support the trial court's submission of an issue of actual authority to the jury.

Defendant Royal next argues that the trial court erred in submitting the issue of apparent authority to the jury. We disagree.

Apparent authority is "that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses." *Investors Title Ins. Co. v. Herzig*, 320 N.C. 770, 774, 360 S.E.2d 786, 788 (1987) (*citing Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E.2d 795 (1974)). *See also Bell Atlantic Tricon Leasing Corp. v. DRR, Inc.*, 114 N.C. App. 771, 443 S.E.2d 374 (1994). It must be shown that a party was reasonable in believing that another had conferred authority to that party to act on its behalf. *Zimmerman*, 286 N.C. 24, 209 S.E.2d 795. There was ample evidence of apparent authority in the instant case which supported the trial court's submission of actual authority to the jury. Evidence presented shows that defendant Royal had knowledge that Cummings LeGrand was the retail agent; that defendant Royal used Cummings LeGrand to do its bidding; and that it never informed Capitol Funds that Cummings LeGrand's authority was limited.

Defendant Royal argues that Capitol Funds acted unreasonably in that the policy provision provided that "the policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy." Defendant Royal relies on *Pearce v. American Defender Life Ins. Co.*, 74 N.C. App. 620, 330 S.E.2d 9 (1985), *aff'd in part, rev'd in part*, 316 N.C. 461, 343 S.E.2d 174 (1986) to support its argument. The policy language in *Pearce*, however, is distinguishable. In *Pearce*, the policy language was as follows: "No alteration of this

**CAPITOL FUNDS, INC. v. ROYAL INDEMNITY CO.**

[119 N.C. App. 351 (1995)]

Policy and no waiver of any of its provisions shall be valid unless made in writing by us and signed by our President, Vice President or Secretary." *Pearce*, 74 N.C. App. at 627, 330 S.E.2d at 13. The *Pearce* policy provision requires that changes be made in writing, but the language in the instant case provides that changes may be made by endorsement. It does not require the endorsement to be in writing or preceded by a verbal binder. Additionally, the instant policy does not require that a specific officer or representative issue the endorsement.

Defendant Royal also argues that the trial court erred in its instructions on indemnity by Cummings LeGrand to Royal. In the instant action, the issue of whether Mr. LeGrand had authority was submitted to the jury and answered in the affirmative; thus, the issue of indemnity need not be addressed.

Defendant Royal's final argument is that the trial court erred in allowing certain testimony and disallowing other testimony. Defendant Royal argues that the court abused its discretion in refusing to admit testimony about "errors and omissions" insurance coverage. It is within the trial judge's sound discretion as to whether to exclude evidence under Rule 403. *State v. Mason*, 315 N.C 724, 340 S.E.2d 430 (1986). Under N.C.R. Evid. 403, a trial court may exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. . . ." As defendant Royal has failed to show that the trial judge's ruling was arbitrary and could not have been the result of a reasoned decision, its argument must fail. Further, defendant Royal has not shown that the exclusion of the testimony prejudiced defendant Royal and affected the result in this action. *Dept. of Transportation v. Craine*, 89 N.C. App. 223, 365 S.E.2d 694, *disc. review denied*, 322 N.C. 479, 370 S.E.2d 221 (1988).

Accordingly, the trial court properly denied defendant Royal's motions for a directed verdict and J.N.O.V.; therefore, the decision of the trial court is without error.

No error.

Judges GREENE and MARTIN, JOHN C. concur.